WILSON, District Judge,
concurring:
Plaintiffs would like to render medical services in Virginia with equipment they cannot utilize without first proving to the Commonwealth that the competition they bring with them will not harm established local health care providers. In my opinion, little distinguishes such a regulatory system from one that offends the dormant commerce clause by isolating local interests from the national economy.
A handful of states initially developed certificate of need regulations in the 1960s. Congress injected the certificate of need regimen more broadly into national health care planning when it enacted the National Health Planning and Resource Development Act of 1974 (the “NHPRDA”), Pub.L. 93-641, 88 Stat. 2225, §§ 1-3, to control escalating health care costs and the widely diverging availability of health care services. The NHPRDA had the incidental effect of protecting the states’ certificate of need regimens from dormant commerce clause scrutiny. But twelve years later, Congress repealed the NHPRDA, Pub.L. 99-60, 100 Stat. 3743 (1986), after its failures had become well past obvious. The NHPRDA’s repeal removed the certificate of need’s shield from dormant commerce clause scrutiny. Yet, twenty-seven years later, in Virginia, and throughout much of the country, state certificate of need regimens continue to grow and now regulate an enormous segment of the national economy. The Virginia regimen explicitly regulates its share of that economy by using the certificate of need to “diseourage[] the proliferation of services that would undermine the ability of essential community providers to maintain their financial viability.” 12 Va. Admin. Code § 5-230-30 (2013). Stripped of its linguistic pretense, the Commonwealth’s purpose is to protect established “community providers” (i.e., established in-state interests) from the effects of competition. Though this purpose or goal may be legitimate, I find little difference in the means it employs to accomplish that goal — the limitation of competition — from illegitimate efforts to isolate local economic interests from the national economy. Wyoming v. Oklahoma, 502 U.S. 437, 456-57, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) (noting the court has “often examined a ‘presumably legitimate goal,’ only to find that the State attempted to achieve it by ‘the illegitimate means of isolating the State from the national economy’ ”). But even apart from its stated purpose, in my view, a state regulatory system that chooses to limit competition as its means to promote the delivery of health care will still likely, if not inevitably, entangle itself with the dormant commerce clause.